Richard G. Grant
Tex. Bar No. 08302650
CM LAW, LLP
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
TED VENTURES, LLC AND
TREND MEDICAL MANAGEMENT, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DET DALLAS CLINICS, LLC and | § | Case No. 26-34294-SWE-11 |
| TREND PHYSICIANS GROUP, INC., | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

**RESPONSE OF TED VENTURES, LLC AND TREND MEDICAL MANAGEMENT, LLC IN OPPOSITION TO DEBTORS' MOTION TO DISMISS**

TED Ventures, LLC and Trend Medical Management, LLC (collectively, "Creditors" or "Respondents"), by and through their undersigned counsel, file this Response in Opposition to the Debtors' Motion to Dismiss, originally filed in the United States Bankruptcy Court for the Southern District of Texas as ECF No. 54 and refiled in this Court on September 23, 2026 as ECF No. 59 (the "Motion to Dismiss") and respectfully state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this District pursuant to 28 U.S.C. § 1408 and the Order Granting Motion to Transfer Venue (ECF No. 52) entered by the United States Bankruptcy Court for the Southern District of Texas on September 21, 2026.

## BACKGROUND

### A. The Chapter 11 Cases

2. On August 14, 2026, DET Dallas Clinics, LLC ("DET") and TREND Physicians Group, Inc. ("TPG") (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 26-35975 (jointly administered). The petitions were filed on the last business day before the third trial setting in state-court litigation brought by Creditors against the Debtors and affiliates in the 162nd Judicial District Court of Dallas County, Texas, Cause No. DC-25-05848.

3. Both Debtors are controlled by Atul "Lucky" Chopra ("Chopra"), who exercises sole and unfettered authority over all financial transactions and decision-making for DET, TPG, Zoo Capital Holdings, LLC ("Zoo Capital"), and all affiliated entities.

### B. Creditors' Motions and the Transfer

4. On August 25, 2026, Creditors filed a Motion for Relief from Automatic Stay (ECF No. 13), which was granted on September 15, 2026 (ECF No. 37). On August 27, 2026, Creditors filed a Motion for Appointment of a Chapter 11 Trustee (ECF No. 20) and a Motion for Examination Under Bankruptcy Rule 2004 (ECF No. 21). On August 27, 2026, Creditors filed an Amended Motion to Transfer Venue (ECF No. 19), which was granted on September 21, 2026 (ECF No. 52). On the same date, the Court entered the Order Mooting Motions (ECF No. 55), denying ECF Nos. 20 and 21 as moot solely because venue was being transferred.

5. Judge Norman found that there was no rational basis for venue in the Southern District of Texas; that the Northern District of Texas was more convenient for all parties; and

that related litigation was pending before Judge Ada Brown in the Northern District of Texas, Case No. 3:26-cv-02783-E.

**C. The Debtors' Post-Transfer Filings**

6. On September 21, 2026—the same day the Southern District of Texas entered the Order Granting Motion to Transfer Venue (ECF No. 52)—the Debtors filed the Motion to Dismiss (ECF No. 54), noticed for hearing before the transferring court on November 3, 2026, and an Emergency Motion to Reconsider the Lift Stay Order (ECF No. 53), raising for the first time allegations under the Computer Fraud and Abuse Act ("CFAA"). On September 23, 2026, the Debtors refiled the Motion to Dismiss in this Court as ECF No. 59 and refiled the Emergency Motion to Reconsider in this Court as ECF No. 58.

7. On September 22, 2026, these cases were docketed in this Court as Case No. 26-34294-swe11 (Jointly Administered) and assigned to the Honorable Scott W. Everett, United States Bankruptcy Judge (ECF No. 56).

8. On September 23, 2026, the Texas Medical Board, through the Office of the Texas Attorney General, filed a Notice of Appearance and Request for Service of Papers (ECF No. 57).

9. On September 29, 2026, the Debtors filed a Notice of Withdrawal of Document withdrawing Docket No. 54 (ECF No. 60) and a Notice of Withdrawal of Document withdrawing Docket No. 53 (ECF No. 61). The refiled Motion to Dismiss (ECF No. 59) and the refiled Emergency Motion to Reconsider (ECF No. 58) remain pending.

10. On October 5, 2026, the United States Trustee filed a Notice of Appointment of Thomas Albert Mackey as Patient Care Ombudsman under 11 U.S.C. § 333 (ECF No. 63). On October 6, 2026, the Clerk issued a deficiency notice requiring an amended appointment using

the correct event (ECF No. 64), and on October 13, 2026, the United States Trustee filed an Amended Notice of Appointment (ECF No. 66).

11. The Debtors have filed their Schedules of Assets and Liabilities (ECF No. 32, as amended). DET's Amended Schedule A/B reveals that DET's only scheduled asset is a $10,454,701 counterclaim against the Creditors themselves. DET has no cash, no bank accounts, no equipment, no receivables, and no operating business.

12. The § 341 meeting of creditors was originally set for October 13, 2026 in the Southern District of Texas and must be rescheduled in the transferee court.

## ARGUMENT

### A. The Transferring Court's Findings Weigh Against Dismissal

13. As Judge Norman observed, "bankruptcies filed on the eve of trial, especially state court trials are in this court's eyes somewhat suspect. They always have the appearance of simply avoiding trial and avoiding what I would consider to be a final reckoning." (Sept. 15, 2026 Unofficial[1] Hr'g Tr. Vol. 2 at 22.) The Debtors' Motion to Dismiss is a continuation of that avoidance. Having used the bankruptcy filing to halt the state-court trial, the Debtors now seek to dismiss these cases entirely to avoid the consequences of the very filing they chose.

14. Judge Norman further found that there was "no real reason" for the federal court to hear the state-court claims and that "the debtor bears the burden of proof on many matters under 362(g)" and "the debtor has failed to meet their burden under 362(g)." (Sept. 15, 2026 Unofficial Hr'g Tr. Vol. 2 at 22–23.) If the Debtors could not meet their burden to justify

[1] Quotations from the September 15, 2026 hearing are taken from an unofficial transcript prepared from the audio recordings of the proceedings maintained by the United States Bankruptcy Court for the Southern District of Texas. Official transcripts of the proceedings were ordered on September 23, 2026, with a fourteen-day turnaround. The official transcripts have not yet been received, and Creditors will supplement the record upon their completion.

retaining the stay, they should not now be permitted to dismiss these cases to avoid the consequences of that finding.

15. The Debtors' own general counsel confirmed that DET "does not have its own bank account" (Sept. 15, 2026 Unofficial Hr'g Tr. Vol. 2 at 9), that revenue was approximately $57,000 over 60 days and was "probably break even, if not a loss" (Sept. 15, 2026 Unofficial Hr'g Tr. Vol. 2 at 15–16), and could not say who paid the $50,000 bankruptcy retainer (Sept. 15, 2026 Unofficial Hr'g Tr. Vol. 2 at 11). This testimony confirms that the Debtors have no viable reorganization plan and cannot fund these cases—but the proper remedy is appointment of an independent trustee to investigate and pursue estate claims, not dismissal that would abandon those claims.

16. When pressed on the reorganization path, the general counsel could offer only vague plans to "shed the liabilities" and "bring providers" (Sept. 15, 2026 Unofficial Hr'g Tr. Vol. 2 at 14), confirming the absence of a viable reorganization strategy. Under § 1112(b), that absence weighs in favor of conversion or appointment of a trustee, not dismissal.

**B. Appointment of a Trustee or Conversion Is a Superior Remedy to Dismissal**

17. Even if this Court reaches the merits of the Motion to Dismiss, dismissal is not the appropriate remedy. Under 11 U.S.C. § 1112(b), if the court finds cause, the court must consider whether conversion or appointment of a trustee would better serve the interests of creditors and the estate before ordering dismissal. See 11 U.S.C. § 1112(b)(1) ("[T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . ."); *In re Rollan*, 434 B.R. 753, 757 (Bankr. S.D. Tex. 2010) ("Congress has specified that the Code favors conversion over dismissal in order to protect the interests of all parties.").

18. Here, Creditors have filed a contemporaneous Renewed Motion for Appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104(a), which demonstrates cause for appointment of a trustee based on fraud, dishonesty, incompetence, gross mismanagement, an irreconcilable conflict of interest, and the alter ego relationship between Chopra, Zoo Capital, and the Debtors. An independent fiduciary—whether a Chapter 11 trustee or a Chapter 7 trustee upon conversion—is essential to investigate and pursue claims on behalf of the estate that the current debtor-in-possession, controlled by Chopra, will never pursue.

19. The estate has potential avoidance actions against insiders, including claims arising from: (a) the $29,142,894.89 in undocumented intercompany transfers; (b) the factoring of approximately $47 million in receivables sixteen days after the APCA closing for approximately $6.1 million; (c) the diversion of funds to Chopra's personal restaurant ventures and real-estate entities; and (d) the deliberate undercapitalization of DET. These claims can only be investigated and pursued by an independent fiduciary. Dismissal would extinguish these claims and leave estate assets beyond the reach of creditors.

**C. The Debtors' Stated Basis for Dismissal Is Self-Serving and the Product of Their Own Misconduct**

20. The Debtors' sole stated reason for dismissal—insufficient cash to fund both case administration and the state-court litigation—is self-serving and is the direct result of Chopra's pre-petition misconduct. It is well-established that a debtor should not be permitted to benefit from its own pre-petition stripping of assets by claiming the estate it created is too impoverished to administer. See *In re Rollan*, 434 B.R. at 758.

21. The Debtors' impoverishment is not accidental. Chopra orchestrated a scheme to acquire assets worth more than $13 million from Creditors while never paying the agreed consideration. He bounced checks totaling approximately $750,000 in returned items, defaulted

on a $3,000,000 subordinated promissory note, never issued $6,000,000 in rollover securities, factored $47 million in receivables pledged as collateral, and directed more than $29 million in undocumented intercompany transfers. DET was never capitalized to perform any obligation: it had no employees, no bank account, no billing operations, and no revenue. See Declaration of Derek Gove (ECF No. 15) ¶¶ 9–40, 71–74.

22. A debtor who engineers its own financial distress through pre-petition fraud and asset-stripping cannot then invoke that distress as "cause" for dismissal. The proper remedy is appointment of a trustee to investigate and pursue claims against the insiders who created the distress.

**D. Dismissal Would Ratify the Pre-Petition Fraud and Deprive Creditors of Bankruptcy Remedies**

23. Dismissal of these cases would have devastating consequences for creditors and the estate. If these cases are dismissed, the automatic stay dissolves, the estate ceases to exist, and all potential avoidance actions—including fraudulent transfer claims, preference claims, and claims under 11 U.S.C. §§ 544, 547, 548, and 550—are extinguished. Chopra would be free to continue operating the Debtor entities (or to dissolve them) without any independent oversight, effectively ratifying the pre-petition fraud.

24. Moreover, dismissal would leave Creditors in a worse position than if these cases had never been filed. The Debtors filed for bankruptcy on the eve of trial in the state-court litigation, halting proceedings that had been litigated for sixteen months. While the automatic stay has been lifted as to the state-court claims (ECF No. 37), the bankruptcy filing has already caused significant delay and expense. Dismissal without appointment of a trustee or conversion would reward the Debtors for filing a bad-faith bankruptcy petition on the eve of trial.

**E. The Renewed Motion for Appointment of a Chapter 11 Trustee Provides a Superior Remedy**

25. Creditors have filed contemporaneously herewith a Renewed Motion for Appointment of a Chapter 11 Trustee Under 11 U.S.C. § 1104(a), Or in the Alternative, for Conversion to Chapter 7 Under 11 U.S.C. § 1112(b). That motion demonstrates, in detail, cause for appointment of a trustee based on:

(a) Fraud, dishonesty, and gross mismanagement by Chopra in the conduct of DET's and TPG's financial affairs, including the bounced checks, defaulted note, unissued securities, factored receivables, and undocumented intercompany transfers;

(b) Incompetence of current management, as evidenced by the failure to capitalize DET, the absence of any financial controls, and the filing of schedules showing DET has no assets other than a counterclaim against Creditors;

(c) An irreconcilable conflict of interest arising from Chopra's control of the DIP and his personal interest in avoiding investigation of his own pre-petition conduct; and

(d) The alter ego relationship among Chopra, Zoo Capital, DET, and TPG, which permitted Chopra to commingle funds and strip assets at will.

26. Appointment of an independent trustee—or, in the alternative, conversion to Chapter 7—is the remedy that best serves the interests of creditors and the estate. Dismissal serves only Chopra's interests.

**F. Alternatively, Any Dismissal Should Bar Refiling for 365 Days**

27. Should the Court nonetheless determine that dismissal is appropriate, Creditors request in the alternative that dismissal be with prejudice to the extent that the Debtors, DET Dallas Clinics, LLC and TREND Physicians Group, Inc., be enjoined from filing a petition under any chapter of the Bankruptcy Code for a period of 365 days from entry of the dismissal order. Section 349(a) of the Bankruptcy Code authorizes the Court, for cause, to order that dismissal bars a later case, and section 105(a) authorizes the Court to issue any order necessary or

appropriate to carry out the provisions of the Bankruptcy Code and to prevent an abuse of process. 11 U.S.C. §§ 105(a), 349(a).

28. Cause exists on this record. The Debtors filed these cases in the last hour of the last business day before a state-court trial that had been litigated for sixteen months. The transferring court observed that bankruptcies filed on the eve of trial "always have the appearance of simply avoiding trial," and found that the Debtors failed to carry their burden under 11 U.S.C. § 362(g). The Debtors now seek dismissal because the stay has been lifted and the state-court litigation will proceed. Absent a refiling bar, nothing would prevent the Debtors from filing new petitions on the eve of the rescheduled trial and repeating the same delay. A 365-day bar is limited in duration and directed only to that risk.

## PRAYER

WHEREFORE, Creditors TED Ventures, LLC and Trend Medical Management, LLC respectfully request that this Court:

(a) Deny the Debtors' Motion to Dismiss (ECF No. 59);

(b) Grant the Creditors' contemporaneously-filed Renewed Motion for Appointment of a Chapter 11 Trustee and appoint an independent Chapter 11 trustee for DET Dallas Clinics, LLC and TREND Physicians Group, Inc.;

(c) In the alternative, if the Court declines to appoint a Chapter 11 trustee, convert these cases to cases under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b);

(d) In the further alternative, if the Court dismisses these cases, order that the dismissal is with prejudice to the extent that DET Dallas Clinics, LLC and TREND Physicians Group, Inc. are enjoined from filing a petition under any chapter of the Bankruptcy Code for 365 days from entry of the dismissal order, pursuant to 11 U.S.C. §§ 105(a) and 349(a); and

(e) Grant such other and further relief as the Court deems just and proper.

Dated: October 14, 2026

Respectfully Submitted,

CM LAW, LLP

By: /s/ Richard Grant
Richard G. Grant
Tex. Bar No. 08302650

National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
TED VENTURES, LLC AND
TREND MEDICAL MANAGEMENT, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing via the Court's Electronic Case Filing system to all persons participating therein on October 14, 2026.

/s/ Richard Grant
Richard G. Grant