OKIN ADAMS BARTLETT CURRY LLP
Matthew S. Okin (00784695)
Ryan A. O'Connor (24098190)
1113 Vine Street, Suite 240
Houston, Texas 77002
Telephone: (713) 228-4100
Email: mokin@okinadams.com
Email: roconnor@okinadams.com

*Attorneys for Zoo Capital Holdings, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>DET DALLAS CLINICS, LLC, *et al*.<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-34294-SWE-11<br>(Jointly Administered) |

**ZOO CAPITAL HOLDINGS, LLC'S OBJECTION TO RENEWED MOTION FOR EXAMINATION UNDER BANKRUPTCY RULE 2004**
**(Relates to Docket No. 68)**

Zoo Capital Holdings, LLC ("Zoo Capital"), hereby files this Objection to the *Renewed Motion for Examination Under Bankruptcy Rule 2004* [Docket No. 68] (the "2004 Motion") filed by TED Ventures, LLC and Trend Medical Management, LLC (collectively, the "Movants"), and in support hereof, respectfully states as follows:

## I. BACKGROUND

1. On August 14, 2026 (the "Petition Date"), DET Dallas Clinics, LLC and TREND Physicians Group, Inc. (collectively, the "Debtors") filed voluntary petitions for relief (the

[1] The last four digits of federal tax identification number is DET Dallas Clinics, LLC is 2390 and TREND Physicians Group, Inc. is 9520. The location of Debtors' principal place of business and service address is 1911 Bagby, Houston, Texas, 77002.

"Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Transferor Court").

2. On August 25, 2026, Movants filed several motions with requests for affirmative and alternative relief spanning from transfer of venue of these Chapter 11 Cases, relief from the automatic stay, appointment of a chapter 11 trustee, conversion to chapter 7, and the examination and production of documents from numerous persons and entities under Bankruptcy Rule 2004. *See* Docket No. 11 (the "Venue Motion"); Docket No. 12 (the "Original Trustee Motion"); Docket No. 13 (the "Lift Stay Motion"); and Docket No. 14 (the "Original 2004 Motion").

3. Two days later, on August 27, 2026, Movants amended or re-filed the Venue Motion, the Original Trustee Motion and Original 2004 Motion. *See* Docket Nos. 18-21. In the re-filed Original 2004 Motion [Docket No. 21], the Movants sought entry of an order authorizing the examination of, and production of documents from, numerous parties that far exceeded the scope of what is necessary or appropriate at this stage of the Chapter 11 Cases. On September 15, 2026, Zoo Capital objected to the Original 2004 Motion. *See* Docket No. 41 (the "Original Objection").

4. The meeting of creditors pursuant to section 341 of the Bankruptcy Code has not yet occurred. It was originally scheduled for October 13, 2026 in the Transferor Court and has now been rescheduled for November 9, 2026. *See* Docket No. 65. As part of the 2004 Motion, Movants still seek to effectively conduct their own 341 meeting by examining the "[a]ccuracy and completeness of the Debtors' schedules and Statements of Financial Affairs." 2004 Motion, ¶ 13(g).

5. On August 28, 2026, just three days after Movants filed the Original 2004 Motion, the Debtors timely filed their Schedules and Statements of Financial Affairs. *See* Docket Nos. 22

and 23. The fact that Movants rushed to seek sweeping third-party discovery before even reviewing the Debtors' sworn disclosures underscores the premature and disproportionate nature of their requests. Remarkably, the renewed 2004 Motion still describes the Debtors' schedules and Statements of Financial Affairs as "due August 28, 2026 and [having] not yet been filed," 2004 Motion, ¶ 13(g), even as it elsewhere relies on those same schedules, *id.* at ¶¶ 7, 17, confirming that the renewed request is a recycled version of the original rather than a request tailored to the current record.

6. On September 15, 2026, following an evidentiary hearing at which Derek Gove and Jonathan Curth testified, the Transferor Court granted the Lift Stay Motion to permit the state-court litigation to proceed. *See* Docket No. 37 (the "Lift Stay Order").

7. On September 21, 2026, the Transferor Court entered an order transferring venue of the Chapter 11 Cases to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), *see* Docket No. 52, and simultaneously entered an order denying the Original Trustee Motion and the Original 2004 Motion as moot because venue was being transferred, *see* Docket No. 55. On September 22, 2026, the Chapter 11 Cases were docketed in this Court as Case No. 26-34294-SWE-11 (Jointly Administered) and assigned to the Honorable Scott W. Everett. *See* Docket No. 56.

8. On October 14, 2026, Movants filed in this Court a renewed motion for appointment of a chapter 11 trustee or, in the alternative, conversion to chapter 7 [Docket No. 67] (the "Trustee Motion"), together with the 2004 Motion made the basis of this Objection. The 2004 Motion seeks examination of the same persons and entities targeted by the Original 2004 Motion, on an expanded list of sixteen topics and thirteen categories of documents, including new topics concerning the Debtors' indebtedness to Enterprise Bank & Trust and the Debtors' contention that

such indebtedness constitutes Senior Debt conditioning payment of the Subordinated Promissory Note, and it further argues that examination is needed to investigate the Debtors' proposed Computer Fraud and Abuse Act ("CFAA") counterclaims. *See* 2004 Motion, ¶¶ 12–14, 18.

9. The 2004 Motion does not cure the deficiencies identified in the Original Objection. Zoo Capital therefore files this Objection and incorporates the Original Objection by reference.

## II. RESPONSE AND OBJECTION

### A. *Threshold Procedural Objection*: *Failure to Confer with the Third-Party Discovery Target*

10. As a threshold matter, the 2004 Motion should be denied for noncompliance with the applicable local rules. Before seeking court intervention to compel discovery, [the Local Bankruptcy Rules for the Northern District of Texas] require the movant to confer with the party or person from whom the discovery is sought, not merely with other parties to the case. *See* [N.D. Tex. L.B.R. 2004-1(a)]. Although the Original Objection filed by Zoo Capital identified this same deficiency, the Certificate of Conference attached to the 2004 Motion again confirms that Movants conferred only with counsel for the Debtors. No conference was held with Zoo Capital, with counsel for Atul Chopra in his individual capacity, or with Steven Ryan Reneau. The Certificate of Service likewise reflects service only through the Court's CM/ECF system and by first-class mail to an attached service list, with no indication of service on any of these third-party targets. This procedural failure alone warrants denial or, at a minimum, requires Movants to comply with the conferral requirement before the Court considers the merits.

### B. *Reservation of Specific Objections*

11. Zoo Capital files this Objection to challenge whether the 2004 Motion should be granted at all. Nothing in this Objection constitutes a waiver of Zoo Capital's right to raise specific objections to individual examination topics, document requests, or deposition notices at the

appropriate stage (i.e., after formal service of any discovery requests that may be authorized). Zoo Capital expressly reserves all such objections, including but not limited to objections based on relevance, overbreadth, undue burden, privilege, and work-product protection. The discussion of the scope of the proposed discovery in this Objection is offered solely to demonstrate that the Movants have failed to satisfy the threshold good-cause requirement, not to litigate the propriety of individual requests.

12. Bankruptcy Rule 2004 is a basic discovery device in bankruptcy cases. While its scope may be broad, it is not limitless. *In re Buccaneer Res., LLC*, 2015 Bankr. LEXIS 4203, *19 (Bankr. S.D. Tex. Dec. 10, 2015). The "examination should not be so broad as to be more disruptive and costly" than it is beneficial to the creditor. *Id.* (quoting *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987). Examinations should be denied when the cost and disruption to the debtor outweigh the benefits to the examiner. *Id.* (citing *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998)). Indeed, a court also has discretionary power to limit the scope of discovery, prevent fishing expeditions, and protect a party from undue burden or expense. *See In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 765–66 (Bankr. D.N.M. 2014) (discussing the court's authority to limit the scope of a Bankruptcy Rule 2004 examination as justice may require); *see also In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (noting "the availability of Rule 2004 as a discovery tool is not unlimited").

13. Discovery requests under Bankruptcy Rule 2004 should be limited to matters involving the debtor. Requests about matters having no relationship to the debtor's affairs or administration of the estate are improper. *See, e.g., Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362, 364 (S.D.N.Y. 1984); *In re Express One Int'l, Inc.*, 217 B.R. 215, 216 (Bankr. E.D. Tex. 1998); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr.

E.D.N.Y. 1991); *In re Financial Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). The party seeking the discovery under Bankruptcy Rule 2004 has the burden of showing good cause for the discovery which it seeks. *See generally In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

14. With that background in mind, Zoo Capital files this Objection to the 2004 Motion and objects to the Movants' overbroad and improper attempts to conduct discovery and depositions of Zoo Capital's representatives and "all affiliated entities" repeatedly referenced throughout the 2004 Motion.

15. Movants cannot show good cause for seeking carte blanche authority to embark on a fishing expedition of matters that have no logical bearing on the administration of these Chapter 11 Cases, and Zoo Capital respectfully submits that the Court should invoke its discretionary power to prohibit such unreasonable discovery with respect to any non-Debtor entities targeted by the 2004 Motion.

16. Although this Objection is filed on behalf of Zoo Capital, Zoo Capital objects to the 2004 Motion in its entirety, not merely to the requests specifically directed to it or its corporate representative. The 2004 Motion seeks a single, consolidated order authorizing examinations and document production from multiple persons and entities, and the sweeping scope of that requested relief affects Zoo Capital's interests regardless of whether a particular request names Zoo Capital by name.

17. Zoo Capital further objects to any discovery directed to its affiliates, representatives, or related non-debtor entities, other than the Debtors themselves. Most of the non-debtor entities and individuals targeted by the 2004 Motion are not parties to these Chapter 11

Cases, and the Movants have not established any basis for subjecting them to the burden and expense of broad discovery at this stage of the proceedings.

18. To the extent that Atul "Lucky" Chopra, as a control person of Zoo Capital, is subject to any examination, notwithstanding the foregoing objections, Zoo Capital respectfully submits that any such examination must be strictly limited to matters directly concerning the Debtors' financial affairs and the administration of the Debtors' estates. Even then, the Court should permit such examination only upon a showing that the information sought cannot be obtained from the Debtors themselves, their officers, or another available witness or source. A control person's relationship to a non-debtor parent entity does not, standing alone, subject that individual to unlimited inquiry into the affairs of every entity in a corporate family.

**C. *The 2004 Motion Is Still Premature***

19. The Original 2004 Motion was filed on August 25, 2026, only eleven days after the Petition Date, and re-filed on August 27, 2026. Movants have now renewed it in this Court in substantially the same form. The meeting of creditors pursuant to section 341 of the Bankruptcy Code still has not been held; it was originally scheduled for October 13, 2026 in the Transferor Court and has now been rescheduled in this Court for November 9, 2026. *See* 2004 Motion, ¶ 19; and Docket No. 65. Indeed, Movants concede that the requested examinations are meant to “complement” a 341 meeting that has not yet occurred. *Id*.

20. The Movants are not the estate's fiduciary. They are not a trustee or examiner charged with investigating the debtor's affairs. They are disputed creditors—parties who hold unliquidated claims that are the subject of contested state-court litigation. *See* Lift Stay Motion, ¶¶ 1, 8. Yet they continue to seek to leapfrog the orderly administration of these Chapter 11 Cases by conducting sweeping third-party examinations before the most basic steps of the bankruptcy process have occurred, including the 341 meeting.

21. The proper sequence under the Bankruptcy Code and Rules is well established. The starting point for any creditor's investigation is the 341 meeting, at which the debtor is examined under oath. *See* 11 U.S.C. § 343; Fed. R. Bankr. P. 2003(b). Only after that baseline investigation is conducted, and only after the schedules and SOFA are filed and reviewed, should a creditor seek Rule 2004 examinations. And even then, the first target of such examinations should be the Debtor, not third parties. The Movants have inverted this sequence entirely. They have not waited for the 341 meeting. Instead of first examining the Debtors through that process, they seek broad examinations of non-debtor third parties, including Zoo Capital, its representatives, and former employees.

22. This is not the conduct of a creditor with a legitimate investigative need. This is the conduct of a litigant deploying the bankruptcy discovery apparatus as a litigation tool—securing depositions and document production from third parties that it could not obtain in the pending state-court action without complying with the Texas Rules of Civil Procedure.

**D. *Movants' Own Pleadings Negate the Good-Cause Showing Required for Rule 2004 Relief***

23. The Movants bear the burden of demonstrating good cause for authority to conduct examinations under Rule 2004. *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). Good cause requires a showing that the requested discovery is necessary and that the information sought is not otherwise available. Here, the Movants' own contemporaneous pleadings establish that they already possess detailed knowledge of the very facts they claim to need discovery to investigate.

24. In each of their other pleadings, and as further set forth in the *Declaration of Derek Gove* [Docket No. 15] (the "<u>Gove Declaration</u>") filed contemporaneously therewith, the Movants assert detailed factual conclusions with absolute certainty in support of the wide-ranging relief

they seek. Yet, the 2004 Motion is a companion pleading asking for authority to investigate those very same facts as if they remain open questions.

25. Indeed, on the one hand, the Movants tell the Court—and swear to it in Gove Declaration—that they already know these facts (and the Court should rely on them in connection with other relief sought). On the other hand, Movants claim they need license to embark on a sweeping mission to discover those facts. These contradictions cut directly against the necessity and good cause showing for the 2004 Motion, and call into question the veracity of the Gove Declaration and factual allegations asserted in other pending motions. Examples of these blatant contradictions are highlighted below:

| Affirmative Allegation | Contradictions / Discovery Requests |
|---|---|
| • Movants repeatedly emphasize in both the Lift Stay Motion and Gove Declaration that they had already conducted substantial discovery and depositions. *See* Gove Declaration, ¶ 57 ("Discovery was closed on February 20, 2026. Discovery is fully complete, and no further discovery is required for trial."); Lift Stay Motion, ¶ 1 ("Discovery was closed, all depositions were taken..."); Lift Stay Motion, ¶ 9 (Movants already deposed Atul "Lucky" Chopra and just recently deposed Steven Ryan Reneau in July 2026). | • The entire 2004 Motion is, in effect, a request to re-open discovery on numerous topics that Movants themselves assert were fully explored in connection with state court litigation.<br>• This is particularly telling given that a central argument of the Lift Stay Motion was that having to re-litigate these issues ***"would waste judicial resources and impose unnecessary delay and expense on all parties."*** Lift Stay Motion, ¶ 22 (emphasis added). |

| Affirmative Allegation | Contradictions / Discovery Requests |
|---|---|
| • Movants state as fact that "Chopra exercises sole and unfettered control over both Debtors" and "sole and final payment authority over every entity in the corporate group, including DET, TPG, Zoo Capital, and all affiliated non-debtor entities." Lift Stay Motion, ¶ 12; Trustee Motion, ¶¶ 14, 20.<br>• The Gove Declaration likewise states Chopra "exercised sole and final payment authority over every entity" and "directed treasury personnel to pull funds from whichever entity had them, and permitted no cash-control system." Gove Declaration, ¶ 25. | • Despite asserting this as an established fact, the 2004 Motion requests examination on "[c]orporate governance and decision-making authority within DET, TPG, Zoo Capital, and all affiliated entities, **including the role of Atul Chopra and the extent of his control**." 2004 Motion, ¶ 13(j).<br>• The 2004 Motion also requests production of "[a]ll corporate governance documents (operating agreements, bylaws, resolutions, minutes)" for these entities. If Chopra's sole and unfettered control is already known, there is no need to examine the "extent" of his control or to request corporate governance documents for that purpose. *Id*. at ¶ 14(e). |
| • The Movants' own 2004 Motion acknowledges that "Mr. Reneau was deposed in the state-court action on July 7, 2026." *Id*. at ¶ 12(d).<br>• The Gove Declaration relies extensively on Reneau's deposition testimony to establish facts about Chopra's control over the Merrill Lynch account, the intercompany transfers, and the factoring of receivables. Gove Declaration, ¶ 31.<br>• The Lift Stay Motion similarly confirms that "[a]ll depositions were taken," including Reneau's in July 2026. Lift Stay Motion, ¶ 9. | • Despite acknowledging that Reneau (a former employee) has already been deposed and that the Movants already possess his testimony, the 2004 Motion seeks to depose Reneau again, claiming he "has direct knowledge of the intercompany transfers among the Chopra entities, the control of the group's bank and investment accounts, the factoring of receivables, and the capitalization of DET and TPG." 2004 Motion, ¶ 12(d). |

| Affirmative Allegation | Contradictions / Discovery Requests |
|---|---|
| • Movants state as established fact—complete with dollar amounts—that "the operating entities' own books recorded $29,142,894.89 in intercompany payables to entities Chopra controls outside the operating group" and that "[t]hese transfers were largely undocumented—no loan agreements, no promissory notes, no board resolutions, no interest, and no repayment terms." *See* Trustee Motion, ¶ 25.<br>• They even specify that "$15,798,654.68 flowed from Cognizant Management Solutions, LLC...to Chopra Imaging Centers, Inc." *Id.* at ¶ 26. | • The 2004 Motion then requests examination on "[i]ntercompany transfers between DET, TPG, Zoo Capital, and all affiliated entities, **including the $29,142,894.89 in undocumented transfers reflected at fiscal year end 2023**." 2004 Motion, ¶ 13(b).<br>• It also requests production of "[a]ll documents evidencing intercompany transfers, including journal entries, wire transfer records, and check images." *Id.* at ¶ 14(c).<br>• Movants assert the exact dollar amount and the undocumented nature of the transfers as known facts, then requests discovery to investigate the very same transfers. |
| • Movants state as fact that "Chopra personally signed documents factoring approximately $47 million in receivables to a third party for approximately $6.1 million in immediate cash" sixteen days after the APCA closing. Trustee Motion, ¶ 24.<br>• The Gove Declaration provides detailed testimony about the factoring, including that Chopra "personally showed me approximately $47 million in available receivables" and then "personally signed documents factoring" them. *See* Gove Declaration, ¶¶ 33-34. | • The 2004 Motion seeks examination on "[t]he December 28, 2023 factoring of approximately $47,000,000 in receivables...including the identity of the purchaser, the terms of the transaction, the consideration received, and the disposition of the accounts receivable." 2004 Motion, ¶ 13(e).<br>• It also requests "[a]ll factoring agreements, assignments of receivables, and related correspondence" and "[a]ll communications between Atul Chopra and any factoring company or accounts receivable purchaser." *Id.* at ¶ 14(d), (g).<br>• Movants have already asserted the identity of who signed, the approximate amounts, the timing, and the effect of the factoring—yet they now seek sweeping discovery regarding the facts that they have already sworn are true. |

| Affirmative Allegation | Contradictions / Discovery Requests |
|---|---|
| • Movants affirmatively assert that "DET Dallas Clinics, LLC—the entity designated as maker of the $3,000,000 Subordinated Promissory Note and obligor under the APCA—was purely an acquisition entity. It had no employees, no bank account, no billing operations, and no revenue of its own. It was never capitalized." Trustee Motion, ¶ 27.<br>• Similarly, "Zoo Capital Holdings, LLC had no bank account of its own and held assets insufficient to satisfy the obligations it undertook." *Id.* at ¶ 28. | • The 2004 Motion seeks examination on "[c]apitalization (or lack thereof) of DET Dallas Clinics, LLC and Zoo Capital Holdings, LLC, including initial capitalization and subsequent capital contributions." 2004 Motion, ¶ 13(c).<br>• It also requests "[a]ll documents relating to the capitalization of DET Dallas Clinics, LLC and Zoo Capital Holdings, LLC, including capital contribution records, loan documents, and equity issuances." *Id.* at ¶ 14(h).<br>• The Movants already assert with certainty that Debtor DET was "never capitalized" and that it had "no bank account"—the discovery request treats these as open questions. |
| • Movants assert as established fact that "Chopra alone controlled" the Merrill Lynch account (No. 23V-02863), that it "held approximately $11.27 million as of September 29, 2023 and approximately $9.85 million as of December 29, 2023," and that "the group's own Chief Financial Officer, Steven Ryan Reneau, had no access to it." Trustee Motion, ¶ 29. | • The 2004 Motion seeks examination on "[c]ontrol of bank accounts and investment accounts, including Merrill Lynch account no. 23V-02863...and the identity of all signatories and persons with authority over such accounts, including the reasons the group's own Chief Financial Officer had no access to that account." 2004 Motion, ¶ 13(d).<br>• Movants say they already know—and state under oath—who controlled the account, its balances, and that the former CFO had no access because it was solely controlled by Chopra. They now request examination on these very same facts. |



4911-5432-8016, v. 3

| Affirmative Allegation | Contradictions / Discovery Requests |
|---|---|
| • Movants assert as fact that "on the same day it filed its petition, AD Dallas Clinics, LLC changed its legal name to 'DET Dallas Clinics, LLC,' which appears to have been intended to obscure the entity's connection to the state-court litigation." Trustee Motion, ¶ 32.<br>• The Gove Declaration asserts that the name change was intended to "make it more difficult for the [Movants] to locate the bankruptcy case." Gove Declaration, ¶ 50.<br>• The Trustee Motion further characterizes this as "evidencing the manipulative nature of the filing." | • The 2004 Motion seeks examination—twice—on "[t]he name change from AD Dallas Clinics to DET Dallas Clinics on the petition date, including the purpose of the change and its relationship to the bankruptcy filing." 2004 Motion, ¶ 13(k), (l).<br>• It also requests "[a]ll documents relating to the name change of AD Dallas Clinics to DET Dallas Clinics." *Id.* at ¶ 14(j).<br>• Movants already assert the purpose of the name change (to obscure the Debtor's identity) and its relationship to the filing (manipulative) in support of their other motions—yet they tell the Court that examination on the same questions is needed in the 2004 Motion. |
| • Movants assert as established fact, based on sworn testimony at the September 15, 2026 evidentiary hearing, that DET "does not have its own bank account," that Trend's revenue during the sixty days before filing was approximately $57,000, and that the Debtors' general counsel could not identify who paid the $50,000 retainer for Debtors' counsel. Trustee Motion, ¶¶ 10–12. | • The 2004 Motion cites the very same testimony as the reason examination is needed, 2004 Motion, ¶¶ 3–6, and requests production of "[a]ll documents relating to payments to Tran Singh, LLP for legal services in these cases." *Id.* at ¶ 14(k). |

26. The Movants may argue that knowing a fact and possessing admissible evidence of it are different things. But that argument does not help them here. At this stage of the case, before the 341 meeting has been held, the question is not whether the Movants have a trial-ready evidentiary package. The question is whether there is a present necessity for sweeping third-party examinations. The Movants' own sworn submissions demonstrate that there is no such necessity. To the extent evidentiary gaps exist, they can be addressed through the normal course of the bankruptcy proceedings, beginning with the Debtor, and through the state-court litigation that the Movants themselves describe as "substantially complete" and on the eve of trial, and which the Lift Stay Order now permits to proceed. *See* Lift Stay Motion, ¶ 1; Lift Stay Order.

27. Movants' request to re-depose Steven Ryan Reneau is particularly egregious. By their own account, Reneau was deposed in the state-court action on July 7, 2026—barely six weeks before the Petition Date. *See* 2004 Motion, ¶ 12(d). The Movants' Lift Stay Motion touts that "Discovery was closed, all depositions were taken" and that the state-court case was trial-ready. Lift Stay Motion, ¶ 1. The Gove Declaration relies extensively on Reneau's deposition testimony to establish facts about the Merrill Lynch account, intercompany transfers, and factoring of receivables. *See* Gove Declaration, ¶ 31. Having obtained Reneau's testimony, relied on it in sworn submissions to this Court, and argued that re-litigation would be wasteful, the Movants now seek to depose the same witness again on the same topics. This is the definition of duplicative and harassing discovery.[2]

**E. *The Totality of the Circumstances Demonstrates Harassment, Not Legitimate Investigative Need***

28. Courts within the Fifth Circuit have recognized that the broad scope of Rule 2004 "is not limitless" and that examinations "should not be so broad as to be more disruptive and costly" than they are beneficial. *In re Buccaneer Res., LLC*, 2015 Bankr. LEXIS 4203, at *19 (Bankr. S.D. Tex. Dec. 10, 2015). Courts may deny or limit Rule 2004 examinations where the totality of the circumstances indicates that the requested discovery amounts to a fishing expedition or harassment. *See In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 765–66 (Bankr. D.N.M. 2014).

29. Here, every indicator of harassment is present. *First*, the breadth of the requests. The Movants seek examinations of four individuals and a corporate representative, on sixteen categories of topics, with production of thirteen categories of documents spanning multiple years

---

[2]As previously noted and acknowledged by Movants, Mr. Reneau is a former employee. Neither Zoo Capital nor the Debtors have any control over his compliance, and it is unclear whether Movants made any efforts affect service of the 2004 Motion upon him as required by the Bankruptcy Local Rules.

and numerous non-debtor entities. The requests are not narrowly tailored to any particular claim or issue; they are a wholesale demand for "all documents" and "all communications" across "all affiliated entities."

30. *Second*, the topics are substantially within the Movants' own knowledge. As detailed above, the Movants' own pleadings assert as established facts the very matters they now claim to need discovery to investigate.

31. *Third*, at least two of the proposed deponents, Atul Chopra and Steven Ryan Reneau, have already been deposed by these same Movants in the state-court action. The Movants touted the completeness of this prior discovery in their Lift Stay Motion.

32. *Fourth*, the timing. The Original 2004 Motion was filed within eleven days of the Petition Date, before the 341 meeting, and before the Movants had even reviewed the schedules and SOFA. The renewed 2004 Motion still precedes the 341 meeting in this Court and still treats the schedules as not yet filed. *See* 2004 Motion, ¶ 13(g).

33. *Fifth*, the new topics target the merits of the state-court litigation. The added Enterprise Bank & Trust topics address the parties' obligations under the APCA and the Debtors' Senior Debt defense to payment of the Subordinated Promissory Note, and Movants seek to use Rule 2004 to investigate the Debtors' potential CFAA counterclaims. *See* 2004 Motion, ¶¶ 13(m)–(p), 14(m), 18.

34. Taken together, these factors paint a clear picture: the Movants are not engaged in legitimate investigative discovery. They are using the Rule 2004 mechanism to impose cost, burden, and pressure on third parties, particularly Zoo Capital, in the early stages of a contested bankruptcy case. This is precisely the type of conduct that courts are empowered to restrain.

### F. *The Lift Stay Order Returns the Parties' Disputes to the State Court, Where Discovery Is Closed*

35. Since the Original Objection was filed, the Transferor Court granted the Lift Stay Motion so that the state-court litigation could proceed to trial. *See* Lift Stay Order. Movants obtained that relief by representing that discovery was closed, that all depositions had been taken, and that re-litigating these issues would waste judicial resources. *See* Lift Stay Motion, ¶¶ 1, 22. The Transferor Court, addressing the closed state-court discovery, stated: "If your discovery deadlines are passed, which there's an allegation they are, I wouldn't reopen them. They're done. You're finished." Trustee Motion, ¶ 7 (quoting Sept. 15, 2026 Hr'g Tr. Vol. 2 at 14).

36. Movants now ask this Court to authorize, through Rule 2004, the very discovery the Transferor Court said would not be reopened. The 2004 Motion's new topics confirm the point. The Enterprise Bank & Trust topics concern the parties' obligations under the APCA and the Debtors' contention that the Enterprise Bank & Trust indebtedness is Senior Debt conditioning payment of the Subordinated Promissory Note—issues bearing directly on Movants' contract and fraud claims in the state-court action. *See* 2004 Motion, ¶¶ 13(m)–(p), 14(m). And the CFAA allegations that Movants say require investigation are potential counterclaims in that same litigation. *Id*. at ¶ 18. Those are matters for the state-court forum and its procedural rules, not for a Rule 2004 examination.

37. Nor does the September 15, 2026 hearing testimony on which the 2004 Motion relies supply good cause. *See* 2004 Motion, ¶¶ 3–6. That testimony was given by the Debtors' general counsel at an evidentiary hearing at which Movants had the opportunity to examine him, and Movants already rely on it as established fact in the Trustee Motion. *See* Trustee Motion, ¶¶ 3–13. Movants' attempt to recast the same testimony as a basis for further discovery is another example of the contradictions described in Section D above.

## III. PRAYER

WHEREFORE, Zoo Capital respectfully requests entry of an order: (i) denying the 2004 Motion in its entirety; (ii) in the alternative, limiting any Rule 2004 examination to the Debtors in the first instance and deferring any third-party discovery until after the section 341 meeting has occurred, the schedules and SOFA have been reviewed, and the Movants have demonstrated a particularized need for third-party discovery that cannot be met through examination of the Debtors; (iii) entering a protective order protecting Zoo Capital and its affiliates and representatives, including Lucky Chopra, from the overbroad and harassing discovery sought; and (iv) granting Zoo Capital such other and further relief as may be just and proper.

Respectfully submitted on the 4th day of November, 2026.

**OKIN ADAMS BARTLETT CURRY LLP**

By: /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

**ATTORNEYS FOR ZOO CAPITAL HOLDINGS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2026 a true and correct copy of the foregoing Objection was served via the Court's CM/ECF system to all parties consenting to service through the same.

By: /s/ *Matthew S. Okin*
Matthew S. Okin